IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 12-cv-60056-KMM

THEODORE B. GOULD, as successor
in interest to MIAMI CENTER LIMITED
PARTNERSHIP,

       Appellant,

vs.

ROBERT C. FURR, as Successor Trustee
to the Estate of JAMES P. DRISCOLL, et al.,

       Appellees.

_____/

## ORDER

THIS CAUSE is before the Court on an appeal from the Order Granting Amended Motion to Approve Settlement and Release Between Successor Trustee and Liberty Mutual Insurance Company and Overruling Miami Center Limited Partnership's Objection, which was entered by the Bankruptcy Court on November 3, 2011. This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 158(a)(1) and Fed. R. Bankr. P. 8001. For the reasons stated herein, the Bankruptcy Court's Order is affirmed.

## FACTUAL BACKGROUND

On June 6, 2006, James P. Driscoll filed a voluntary Chapter 7 bankruptcy petition in the Southern District of Florida. The next day, Marika Tolz was appointed as the Chapter 7 Trustee of the Driscoll bankruptcy estate (the "Driscoll Estate"). Miami Center Limited Partnership ("Miami Center") held 89% of the unsecured claims against the Driscoll Estate.

In June 2010, Tolz was removed as the trustee of the Driscoll Estate when the United States Marshals Service discovered that she had embezzled assets from numerous estates in

which she had served as trustee.  On June 16, 2010, Robert Furr (the "Successor Trustee") was appointed as the Chapter 7 Trustee of the Driscoll Estate.

On October 18, 2010, the United States filed an adversary proceeding against the Successor Trustee (the "United States Adversary Proceeding") in the Southern District of Florida.  The United States alleged that Tolz had converted $967,856 from the United States Marshals Service in connection with a separate matter and deposited it into the Driscoll Estate in order to replace funds she had previously embezzled.

In response to the lawsuit by the United States, the Successor Trustee filed a third-party complaint against Liberty Mutual Insurance Company ("Liberty Mutual") and Tolz (the "Driscoll Complaint").  Prior to these events, Liberty Mutual issued a Blanket Bond of Trustees for bankruptcy liquidations in the Southern District of Florida, naming the United States as obligee and naming trustees in those proceedings as principals (the "Bond").  The Driscoll Complaint alleged that the Bond secured the obligation of Tolz to faithfully perform her duties as a member of the panel of bankruptcy trustees.

On March 18, 2011, the successor trustees of the estates for which Tolz previously served as trustee filed an involuntary bankruptcy petition against her.  On June 2, 2011, Barry Mukamal was appointed the Chapter 7 Trustee for the Tolz bankruptcy proceedings.  On August 5, 2011, Mukamal filed a complaint against the Driscoll Estate in the amount of $101,255.52 for an alleged fraudulent transfer or preference from Tolz (the "Mukamal Adversary Proceeding"). Mukamal alleged that Tolz used funds from her personal account to repay the Driscoll Estate and that those funds were subject to avoidance.

Eventually, the United States and the Successor Trustee settled the United States Adversary Proceeding.  After negotiations, the United States lowered its claim to $866,600.48

2

and waived interest, attorney's fees, and costs. On August, 15, 2011, the bankruptcy court entered a judgment in the amount of $866,600.48 in favor of the United States and against the Driscoll Estate.

After months of litigation and mediation, the Successor Trustee and Liberty Mutual settled the Driscoll Complaint. On September 14, 2011, the Successor Trustee filed an Amended Motion to Approve the Settlement Agreement and Release. Am. Mot. (ECF No. 2-8, at 36). The settlement provided, *inter alia*, that Liberty Mutual would pay the Driscoll Estate $940,000 in exchange for the release of all claims against Liberty Mutual for Tolz's defalcation and an assignment of the Driscoll Estate's claims against Tolz up to the settlement amount (the "Liberty Mutual Settlement Agreement"). Liberty Mutual Settlement Agreement, ¶¶ 2-4 (ECF No. 2-8, at 45). Miami Center filed an Objection to the Motion on October 4, 2011. Objection (ECF Nos. 2-9, 2-10, 2-11). Both the Successor Trustee and Liberty Mutual filed Responses to the Objection. Liberty Mutual Resp. (ECF No. 2-12, at 1); Furr Resp. (ECF No. 2-12, at 32). On November 1, 2011, the Bankruptcy Court held a hearing on the Amended Motion to Approve the Settlement Agreement and Release (the "Hearing"). On November 3, 2011, the Bankruptcy Court entered an Order approving the Liberty Mutual Settlement Agreement and overruling Miami Center's Objection. Order (ECF No. 2-12, at 47). On November 17, 2011, Miami Center filed its Notice of Appeal of the Bankruptcy Court's Order. Notice of Appeal (2-13, at 1).

Miami Center now appeals the Bankruptcy Court's Order and presents the following issues:

(1) Whether the Bankruptcy Court had subject matter jurisdiction to enter the Order; and

(2) Whether the Bankruptcy Court erred in approving the Liberty Mutual Settlement
Agreement.[1]

## DISCUSSION

### A. Standard of Review

"The district court must accept the bankruptcy court's factual findings unless they are
clearly erroneous, 'but reviews a bankruptcy court's legal conclusions de novo.'"  In re
Englander, 95 F.3d 1028, 1030 (11th Cir. 1996).   "Under de novo review, [a] Court
independently examines the law and draws its own conclusions after applying the law to the facts
of the case, without regard to decisions made by the Bankruptcy Court." In re Brown, No. 6:08-
cv-1517-Orl-18DAB, 2008 WL 5050081, at *2 (M.D. Fla. Nov. 19, 2008) (citing In re Piper
Aircraft Corp., 244 F.3d 1289, 1295 (11th Cir. 2001)).  A district court reviews a bankruptcy
court's approval of a settlement agreement for an abuse of discretion.  Christo v. Padgett, 223
F.3d 1324, 1335 (11th Cir. 2000) (citing Leverso v. SouthTrust Bank of Ala., 18 F.3d 1527, 1531
(11th Cir. 1994)). "Abuse of discretion requires that an appellate court affirm unless it finds that
the lower court has made a clear error in judgment or has applied the wrong legal standard." In re
Coastline E. Corp., No. 11–cv–156J32, 2012 WL 831521, at *1 (M.D. Fla. Mar. 12, 2012)
(citing Robinson v. Tyson Foods, Inc., 595 F.3d 1269, 1273 (11th Cir. 2010)).

### B. The Bankruptcy Court's Subject Matter Jurisdiction to Enter the Order

Miami Center argues that the Bankruptcy Court lacked subject matter jurisdiction
because the Liberty Mutual Settlement Agreement determined the liability of the United States in

---

[1] The "Statement of Issues Presented on Appeal" section of Miami Center's Brief contains
numerous issues. Appellant Br., at 1-3 (ECF No. 7). A review of the Brief and Reply (ECF No.
16), however, reveals that there is no analysis or argument for many of these issues. Any issue
that Miami Center failed to provide argument on the merits is deemed waived. See In re
Laurent, 193 Fed. App'x 831, 833 (11th Cir. 2006) (quoting Greenbriar, Ltd. v. City of
Alabaster, 881 F.2d 1570, 1573 n.6 (11th 1989)).

4

violation of the Federal Torts Claims Act ("FTCA"). Appellant Br., at 10. Under the FTCA, the exclusive jurisdiction to adjudicate claims against the United States for money damages lies with the United States District Courts. 28 U.S.C. § 1346. Miami Center contends that the Liberty Mutual Settlement Agreement determined the liability of the United States, as obligee under the Bond, since Liberty Mutual asserted affirmative defenses alleging that the United States was negligent in its oversight of Tolz.

This argument is meritless. The Liberty Mutual Settlement Agreement is solely between Liberty Mutual and the Driscoll Estate and it only released Liberty Mutual, and not the United States, for any of the Driscoll Estate's claims relating to Tolz's misconduct. Liberty Mutual Settlement Agreement, ¶¶ 3, 4. It neither releases nor determines any liability on the part of the United States for negligence in supervising Tolz as the trustee for the Driscoll Estate. The Bankruptcy Court clearly had jurisdiction to enter the Order on the Liberty Mutual Settlement Agreement.[2]

C.      The Bankruptcy Court's approval of the Liberty Mutual Settlement Agreement

Miami Center alleges that the Bankruptcy Court erred in approving the Liberty Mutual Settlement Agreement because (1) the Successor Trustee failed to meet his burden of proof and the Bankruptcy Court refused to hold an evidentiary hearing; and (2) the Bankruptcy Court did not properly evaluate the Liberty Mutual Settlement Agreement under the Justice Oaks factors. This Court addresses each of these arguments in turn.

_____

[2] Miami Center abandoned this argument in its Reply Brief.

1. The Successor Trustee's Burden of Proof and the Bankruptcy Court's Refusal to Hold an Evidentiary Hearing

Miami Center argues the Bankruptcy Court erred because the Successor Trustee failed to submit sufficient evidence to support the reasonableness of the Liberty Mutual Settlement Agreement. Appellant Br., at 16-18. It is well settled that "[t]he proponent of the settlement, in this case Trustee, bears the burden of proof . . . to establish that the settlement is both fair and reasonable and in the best interests of the bankruptcy estate." Fed. Fin. Co. v. Yip, No. 04-20839-CIV-PCH, at 8 (S.D. Fla. Oct. 5, 2004) (citing In re Almengual, 301 B.R. 902, 907 (M.D. Fla. 2003)). When evaluating a settlement, "'the bankruptcy judge must actually exercise his discretion. He may not simply accept the trustee's word that the settlement is reasonable.'" In re Simmonds, No. 10-80379-CIV-FAM, 2010 WL 2976769, at *3 (S.D. Fla. July 20, 2010) (quoting In re Am. Reserve Corp., 841 F.2d 159, 162 (7th Cir. 1987)). "The bankruptcy court must make an informed and independent judgment, considering all of the proper factors." Fed. Fin. Co., No. 04-20839-CIV-PCH, at 11 (emphasis in original) (citing In re Am. Reserve Corp, 841 F.2d at 162). Approval of a settlement "requires more than just a 'rubber-stamping' of an agreement." In re Kay, 223 B.R. 816, 819 (Bankr. M.D. Fla. 1998) (citing Depoister v. Mary M. Holloway Found., 36 F.3d 582, 586 (7th Cir. 1994)).

Miami Center claims the Successor Trustee did not meet its burden of proof because the only evidence submitted in support of the Liberty Mutual Settlement Agreement was an affidavit from Robert Moody (the "Moody Affidavit"). Appellant Br., at 6 n.3, 11-13. The Moody Affidavit demonstrated that Tolz had transferred more money into the Driscoll Estate—approximately $81,325—than she had siphoned out. Moody Aff., ¶ 4 (ECF No. 2-12, at 18). Based on this figure, the Successor Trustee determined that the Liberty Mutual Settlement Agreement was reasonable because $940,000 accounted for (1) the total loss to the estate

resulting from Tolz's fraud; (2) the estate's exposure in the Mukamal Adversary Proceeding;[3] and (3) counsel's fees and costs. Furr Resp., at 2-6. The Successor Trustee explained that the Liberty Mutual Settlement Agreement should be approved because it represented a one hundred percent recovery for the Driscoll Estate and is well within the lowest range of reasonableness. Nov. 1, 2011 Hr'g Tr., at 13 (ECF No. 2-13, at 21).

In support of its claim that the Successor Trustee failed to meet its burden of proof, Miami Center offers the affidavit of Alec Fahey (the "Fahey Affidavit) which alleges the Liberty Mutual Settlement Agreement recovered $167,000 less than the amount Tolz defalcated from the Driscoll Estate. Appellant Br., at 13. However, Miami Center did not submit the Fahey Affidavit in its Objection. Likewise, Miami Center did not offer the Fahey Affidavit at the Hearing and only stated that their forensic accountant disagreed with the Liberty Mutual Settlement Agreement and the interest calculation. Hr'g Tr., at 21. Miami Center offers no explanation for its failure to submit the Fahey Affidavit. Moreover, the Fahey Affidavit is dated November 30, 2011 which is approximately one month after the Hearing and two weeks after the Notice of Appeal. See Fahey Aff. (ECF 2-14, at 1). This precludes this Court's analysis of the Fahey Affidavit because a reviewing "Court's responsibility is to decide whether the bankruptcy court committed error 'based on the record before it.'" Fed. Fin. Co. v. Yip, No. 04-20839-CIV-PCH, at 11 (S.D. Fla. Oct. 5, 2004) (citing First Union Real Estate Equity & Mortg. Invs. v. Club Assocs., 956 F.2d 1065, 1069 (11th Cir. 1992)). It is too late for Miami Center to introduce the Fahey Affidavit to challenge the reasonableness of the Liberty Mutual Settlement Agreement.

---

[3] Additionally, Miami Center argues that the Bankruptcy Court erred in accepting the Successor Trustee's assertion that the Mukamal Adversary Proceeding could be settled. Appellant Br., at 2-3. However, this Court finds that the Bankruptcy Court did not err because the Mukamal Settlement was contingent on the Liberty Mutual Settlement Agreement and extinguished the Driscoll Estate's potential liability of $101,255.52. See Furr Resp., at 5-6.

Additionally, a review of the proceedings belies any of Miami Center's arguments concerning the Successor Trustee's burden of proving the reasonableness of the Liberty Mutual Settlement Agreement.  All parties briefed the Liberty Mutual Settlement Agreement and were given an opportunity to argue their positions at the Hearing.  The Successor Trustee did not simply present generalities to the Bankruptcy Court.  See Id. at 10 (finding that a trustee did not meet its burden in establishing the reasonableness of a settlement agreement where the trustee simply presented generalities).  After evaluating the evidence, the Bankruptcy Court independently determined that the Successor Trustee had met its burden in demonstrating the reasonableness of the Liberty Mutual Settlement Agreement.  See Hr'g Tr., at 27.  There is nothing in the record to demonstrate that the Bankruptcy Court simply "rubber stamped" the Successor Trustee's recommendation.  See In re Kay, 223 B.R. at 819.

Likewise, this Court finds no error in the Bankruptcy Court's refusal to hold an evidentiary hearing.  Under Federal Rule of Bankruptcy Procedure 9019(a), all that is required to approve a proposed settlement is a motion by the trustee, notice, and a hearing.  FED. R. BANKR. P. 9019(a); see In re Air Safety Intern., 336 B.R. 843, 852 (S.D. Fla. 2005).  Here, the Successor Trustee filed a proposed motion and then a hearing was held after the parties briefed the Liberty Mutual Settlement Agreement.  Despite Miami Center's complaints, the Bankruptcy Court was not required to hold an evidentiary hearing.

Therefore, this Court finds that the Successor Trustee met its burden in establishing the reasonableness of the Liberty Mutual Settlement Agreement.  Additionally, the Bankruptcy Court did not err in refusing to hold an evidentiary hearing.

2. The Bankruptcy Court's Analysis of the Liberty Mutual Settlement Agreement under the Justice Oaks Factors

Miami Center argues the Bankruptcy Court abused its discretion in approving the Liberty Mutual Settlement Agreement under the Justice Oaks factors because (1) the Successor Trustee excluded claims against Liberty Mutual which had a high probability of success; and (2) the Bankruptcy Court should have heeded Miami Center's opposition since it is the dominant creditor and offered to fund all litigation expenses.[4]

When considering whether to approve a proposed settlement, a bankruptcy court must consider the factors listed in Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.), 898 F.2d 1544, 1549 (11th Cir. 1990). These factors, known as the Justice Oaks factors, are

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

In re Justice Oaks II, Ltd., 898 F.2d at 1549. "Courts consider these factors to determine 'the fairness, reasonableness and adequacy of a proposed settlement agreement.'" In re Chira, 567 F.3d 1307, 1312-13 (2009) (quoting In re A&C Prop., 784 F.2d 1377, 1381 (9th Cir. 1986)). Under the Justice Oaks factors, a proposed settlement should be approved unless it "falls below the lowest point in the range of reasonableness." In re Bicoastal Corp., 164 B.R. 1009, 1016 (Bankr. M.D. Fla. 1993).

Miami Center claims the Bankruptcy Court erred in failing to consider the Driscoll Estate's probability of success in litigation against Liberty Mutual under the first Justice Oaks factor since the Driscoll Estate had "slam dunk" claims. Appellant Br., at 11-14. However, a

---

[4] This Court consolidated the analysis of the third and fourth Justice Oaks factors since Miami Center's arguments are related. Additionally, since neither party disputes the second factor—the difficulties in collecting from Liberty Mutual—it warrants no further analysis.

review of the record demonstrates that this contention is without merit.  The issue for a bankruptcy judge to determine is whether the trustee's decision to accept a proposed settlement is reasonable.  In re Harbour E. Dev., Ltd., No. 10-20733-BKC-AJC, 2012 WL 1851015, at *2 (Bankr. S.D. Fla. May 21, 2012).  A bankruptcy court is not expected "to hold a 'mini-trial' to determine the merits of each and every claim subject of a disputed settlement, but 'must simply be convinced that a trustee's judgment is based upon a sound assessment of the situation.'"  Id.

Here, the Bankruptcy Court fully evaluated the claims and determined that they were properly excluded from the Liberty Mutual Settlement Agreement because they were "attenuated."  Hr'g Tr., at 28.  For example, Miami Center alleges that the Liberty Mutual Settlement Agreement should include the Driscoll Estate's claim for all interim commissions paid to Tolz. Appellant Br., at 12.  However, the Bankruptcy Court properly rejected this claim after Miami Center could not provide any legal support for its validity.[5]  Additionally, Miami Center argues that the Liberty Mutual Settlement Agreement should have included the expenses paid for professionals that were hired by Tolz to assist with the administration of the Driscoll Estate.  Despite this contention, the Bankruptcy Court properly excluded this claim due to the lack of evidence proving that these professionals incurred their fees in furtherance of Tolz's fraud. Hr'g Tr., at 28.

Miami Center also claims that the Liberty Mutual Settlement Agreement should reflect the tax refunds that Tolz could have pursued while acting as trustee for the Driscoll Estate. Appellant Br., at 16-18.[6]  The Bankruptcy Court properly rejected this claim since both Tolz and

---

[5] Upon rejecting this claim, the Bankruptcy Court stated that that "There is no case law which has been cited to me that a prior interim distribution of fees to a trustee for interim services provided is recoverable under a bond." Hr'g Tr., at 29.
[6] Miami Center's sole argument regarding this is the unsubstantiated allegation that Tolz did not pursue the tax refunds to keep her fraud from being detected. Hr'g Tr., at 18-19.

the Successor Trustee exercised their business judgment not to pursue the tax refund claims pursuant to the advice of hired professionals, including those working for Miami Center. See Hr'g Tr., at 28-29, 48; see In re Solar Fin. Servs., 255 B.R. 801, 804 (Bankr. S.D. Fla. 2000) (stating that "bankruptcy trustees are entitled to qualified judicial immunity for acts taken within their authority as an officer of the court") (citing In re Clearwater Bay Marine Serv., 236 B.R. 285 (Bankr. M.D. Fla. 1999)). Also, the Bankruptcy Court determined that these claims would have taken a long time, had a low likelihood of success, and potentially exposed the Driscoll Estate to a tax liability. Hr'g Tr., at 28. Moreover, such conduct would not be covered under the Bond since Tolz's alleged actions are more likely negligent than fraudulent. In re PSN, 426 B.R. 916, 922 (Bankr. S.D. Fla. 2010) (stating that liability for a trustee's actions "must rise to the level of willful and deliberate conduct or gross negligence") (citing In re Solar Fin. Servs., 255 B.R. at 804)).[7]

The Bankruptcy Court clearly considered the above claims in light of In re Justice Oaks II, Ltd. and rejected them on the merits since they had a low likelihood of success. Again, the issue for a bankruptcy judge to determine is whether the trustee's decision to accept a proposed settlement is reasonable. In re Harbour E. Dev., Ltd., 2012 WL 1851015, at *2. After a review of the record, this Court does not find any error in the Bankruptcy Court's determination that these claims were properly excluded from the Liberty Mutual Settlement Agreement.

---

[7] Additionally, Miami Center's arguments concerning the Driscoll Estate's assignment of claims against Tolz to Liberty Mutual is without merit. As the Bankruptcy Court correctly noted, such assignments against misfeasors are common. Hr'g Tr., at 24. Likewise any argument by Miami Center that the Liberty Mutual Settlement Agreement should reflect the Driscoll Estate's claims against the United States for its negligence in supervising Tolz was properly rejected. This results because the Liberty Mutual Settlement Agreement assigned Liberty Mutual the Driscoll Estate's claims against Tolz, not the Driscoll Estate's claims against the United States. See Liberty Mutual Settlement Agreement ¶ 4.

11

Miami Center also alleges that the Bankruptcy Court erred in failing to consider its paramount interest as the dominant creditor under Justice Oaks II, Ltd. Appellant Br., at 16-17. Miami Center alleges that as the 89% creditor of the Driscoll Estate, the Bankruptcy Court should have given deference to its opposition and rejected the Liberty Mutual Settlement Agreement. Id. Miami Center bolsters this claim since it offered to fund all litigation expenses associated with pursing the claims against Liberty Mutual. Id.

However, this Court disagrees with Miami Center's depiction of the Bankruptcy Court's decision to overrule its Objection. Although Miami Center is correct in its assertion that its interest as the dominant creditor should have been given deference, only "reasonable" creditor views are entitled to such deference. In re Se. Banking, 314 B.R. 250, 273 (Bankr. S.D. Fla. 2004). Here, the Bankruptcy Court clearly evaluated Miami Center's Objection and decided that it was unreasonable.[8] After rejecting all of Miami Center's claims, the Bankruptcy Court implicitly outweighed Miami Center's interests because pursuing attenuated claims with little likelihood of success is unreasonable. See In re Chira, 567 F.3d 1307, 1313 (11th Cir. 2009) ("Although the bankruptcy court did not explicitly consider all four of the Justice Oaks factors in its order approving the settlement agreement, we conclude that the bankruptcy court did not abuse its discretion by approving the settlement agreement."). Additionally, the cases cited by Miami Center do not appear to support its contention that when a dominant creditor objects and offers to fund all litigation expenses that approval of a settlement is automatically an abuse of discretion.[9]

_____

[8] The Bankruptcy Court acknowledged that "the paramount interest of creditors is to be considered and is a serious factor to be considered, but the court must look at this issue as part of a continuum." Hr'g Tr., at 29.

[9] See e.g. Reiss v. Hagmann, 881 F.2d 890, 892-93 (10th Cir. 1989) ("We do not have to go so far as to hold that the bankruptcy court can approve no settlement of a case to bring assets into

In arguing that the Bankruptcy Court should have rejected the Liberty Mutual Settlement Agreement, Miami Center ignores the fact that "[c]ompromises are favored in bankruptcy, especially where protracted litigation can erode the value of the estate and delay the administration of the case to the detriment of all creditors." In re Harbour E. Dev., Ltd., 2012 WL 1851015, at *5 (citing Myers v. Martin, 91 F.3d 389, 393 (3d Cir. 1996)). Here, it is clear that the Bankruptcy Court determined that pursuing Miami Center's attenuated claims, even if fully funded, were not in the best interests of any party.[10] Kay, 223 B.R. at 819 ("The Court must compare the terms of the compromise with the likely rewards of litigation.") (citing In re Jackson Brewing Co., 624 F.2d 599, 602 (5th Cir. 1980)).

Accordingly, this Court finds that the Bankruptcy Court adequately and independently evaluated the Liberty Mutual Settlement Agreement in light of the Justice Oaks factors and did not abuse its discretion in approving the Liberty Mutual Settlement Agreement.

## CONCLUSION

In light of the foregoing, the Bankruptcy Court's Order is affirmed. The Bankruptcy Court had subject matter jurisdiction to enter the order. Additionally, the Bankruptcy Court did not err in determining that the Successor Trustee met its burden of proof and refusing Miami Center's request for an evidentiary hearing. Finally, the Bankruptcy Court did not abuse its discretion when approving the Liberty Mutual Settlement Agreement.

---

the estate over the disapproval of all creditors, or the single creditor, of the estate. At least at the case at bar, when there would be no cost to the estate and nothing to pay creditors without success in the lawsuit, we hold that the bankruptcy court abused its discretion in approving a settlement objected to by the sole creditor.") (emphasis added) (citing In re Lloyd, Carr & Co., 617 F.2d 882, 889 (1st Cir. 1980)); In re Joiner, 319 B.R. 903, 909 (Bankr. M.D. Ga. 2004) (denying motion to compromise where there was a better than fifty percent chance of success in the litigation of claims).

[10] It should also be noted that the only other creditor, Kenneth A. Welt, Chapter 7 Trustee for the Patrick Power Corporation, supported the Liberty Mutual Settlement Agreement. Hr'g Tr., at 12-13.

Accordingly, the Bankruptcy Court's Order Granting Amended Motion to Approve Settlement and Release Between Successor Trustee and Liberty Mutual Insurance Company and Overruling Miami Center Limited Partnership's Objection is hereby AFFIRMED.  The Clerk of the Court is instructed to CLOSE this case.  All pending motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 26th day of July, 2012.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:    All counsel of record